SCOTT E. BRADFORD, OSB # 062824
United States Attorney
District of Oregon
**CASSADY A. ADAMS, CO Bar #48807**
Assistant United States Attorney
Cassady.Adams@usdoj.gov
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **3:25-cr-00265-SI** |
| **v.** | **GOVERNMENT'S SENTENCING MEMORANDUM** |
| **ENRIQUE GUADALUPE ARELLANO-VALDEZ,** | |
| **Defendant.** | |

### Introduction

Defendant Enrique Guadalupe Arellano-Valdez is before the Court for sentencing following entry of a guilty plea to the charge of possession with intent to distribute fentanyl (400 grams or more), in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(vi).

In this case, Arellano-Valdez was arrested with six kilograms of fentanyl powder at a bus stop in Portland, Oregon on June 4, 2025.

**Government's Sentencing Memorandum**                                          **Page 1**

Given the circumstances of this case, the United States recommends a sentence of 33 months custody, followed by five years of supervised release.

## Factual Background

### A. The Offense Conduct

On June 4, 2025, Portland Police Bureau (PPB) and Homeland Security Investigations (HSI) conducted a drug trafficking investigation at a bus stop near SE 100th Avenue and SE Stark Street in Portland, Oregon. PSR ¶ 19. That day, a bus that originated in southern California arrived in Portland at this bus stop. PSR ¶¶ 18-19.

The defendant, Arellano-Valdez, was observed getting off the bus. PSR ¶ 19. He grabbed a duffel bag from the luggage storage area and walked away, approximately 100 yards, before sitting on the sidewalk. *Id.* It appeared that Arellano-Valdez was waiting for someone to pick him up. *Id.*

Investigators walked up to Arellano-Valdez and asked if he would consent to allow a drug K9 to sniff his duffel bag. PSR ¶ 20. Arellano-Valdez consented, and the drug K9 alerted to the presence of controlled substances in his duffel bag. *Id.* With Arellano-Valdez's consent, police searched his duffel bag and found a fruit-flavored snack box that contained 6.717 gross kilograms of fentanyl powder. PSR ¶ 20. The fentanyl powder was separated into eight pressed bricks. *Id.*

//

//

//

//

**Government's Sentencing Memorandum**                                    **Page 2**

Several photographs of the fentanyl are included below for the Court's reference:





As the police found the drugs in the bag, Arellano-Valdez smashed his cellphone on his knee. PSR ¶ 20. He was immediately handcuffed. *Id.* A second cellphone was subsequently recovered from his person. *Id.* Arellano-Valdez invoked his right to counsel. *Id.*

The government applied for and received federal warrants for both of Arellano-Valdez's phones. HSI and PPB reported that the smashed phone was unable to be searched because of the damage. Arellano-Valdez's second phone was unsupported by the technology to unlock the phone, and it could not be accessed by law enforcement to carry out the search warrant.

**Government's Sentencing Memorandum**                                                    **Page 3**

On June 17, 2025, a federal grand jury in the District of Oregon returned an indictment charging Arellano-Valdez with one count of possession with intent to distribute fentanyl (400 grams or more), in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(vi).

Separately, in another investigation, on September 3, 2025, a federal grand jury in the District of Kansas returned an indictment charging Arellano-Valdez and another co-conspirator with drug conspiracy, in violation of 21 U.S.C. § 846; attempted distribution of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A); and possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1), and (b)(1)(A). PSR ¶ 41. The Kansas indictment involved conduct that occurred in 2024 in Kansas. *Id.*

**B. The Plea Agreement & Guideline Computations**

On December 16, 2025, Arellano-Valdez pleaded guilty to the sole count of the indictment in this case, possession with intent to distribute fentanyl (400 grams or more). PSR ¶ 1.

Under the plea agreement in this case, the parties had no agreement as to whether the defendant meets the criteria for a minimal/minor participant adjustment under USSG § 3B1.2. PSR ¶ 7. The Probation Office has applied a two-level mitigating role adjustment under USSG § 3B1.2(b), and the government believes that is appropriate, given the circumstances of this case. PSR ¶ 27. Additionally, under the plea agreement, the government agreed to recommend a three-level downward variance, pursuant to 18 U.S.C. § 3553(a), for defendant's willingness to resolve his case in an early manner. PSR ¶ 12.

The presentence report has calculated Arellano-Valdez's criminal history score to be zero, and his criminal history category is I. PSR ¶ 39.

**Government's Sentencing Memorandum**                                                **Page 4**

The government agrees with the guideline calculations in the presentence report. PSR ¶¶ 26-35.

Pursuant to the plea agreement, the government recommends a sentence of 33 months custody, followed by five years of supervised release.

**Argument**

**A. Defendant bears the burden of proving that he is entitled to the 4-level reduction under USSG § 3B1.2(a) or USSG § 2D1.1(e)(2)(B)(i).**

The government is not contesting probation's application of the two-level minor role adjustment under USSG § 3B1.2(b). PSR ¶ 29.  However, currently there is insufficient evidence in the record and in this case for the defendant to receive the 4-level reduction for being a minimal participant under USSG § 3B1.2(a) or purely acting "among the lowest level of drug trafficking functions, such as serving as a courier, running errands, sending or receiving phone calls or messages or acting as a lookout," under USSG § 2D1.1(e)(2)(B)(i).

Arellano-Valdez was arrested with a large amount of fentanyl in Portland—over six kilograms, which is thousands of lethal doses of fentanyl. PSR ¶ 20.  He smashed his phone at the time of his arrest and did not provide any post-arrest statements to law enforcement. *Id.* Arellano-Valdez provided a very short safety valve statement to the government which narrowly satisfied the safety valve criteria under USSG §§ 2D1.1(b)(18) and 5C1.2. PSR ¶ 26. However, his safety valve statement is too vague to ascertain what his entire role was in the DTO was, and it does not satisfy the burden of proof as far as the four-level minimal participant role reduction under either USSG § 3B1.2(a) or USSG § 2D1.1(e)(2)(B)(i).

Arellano-Valdez bears the burden of proving that he is entitled to the four-level minor role reduction under USSG § 3B1.2(a) or USSG § 2D1.1(e)(2)(B)(i by a preponderance of

**Government's Sentencing Memorandum**                                                                 **Page 5**

evidence, and he has not done so at this time. *See United States v. Howard*, 894 F.2d 1085, 1089-90 (9th Cir. 1990) (Defendant bears the burden of proof where he seeks to lower an offense level at sentencing, the burden is a preponderance of the evidence.). If he satisfies this burden of proof at the time of sentencing, then the Court should apply the four-level reduction.

### B. 18 U.S.C. 3553(a) Sentencing Factors

There are general factors that district courts take into account in exercising their sentencing discretion. Specifically, 18 U.S.C. § 3553(a) directs courts, "in determining the particular sentence to be imposed," to consider the following factors:

(1) "the nature and circumstances of the offense and the history and characteristics of the defendant;"

(2) "the need for the sentence imposed" to serve purposes of the criminal laws;

(3) "the kinds of sentences available;"

(4) "the kinds of sentence and the sentencing range" established by the guidelines;

(5) "any pertinent policy statement" issued by the Sentencing Commission;

(6) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct;" and

(7) "the need to provide restitution to any victims of the offense."

18 U.S.C. § 3553(a)(1)-(7).

Many of the § 3553(a) factors warrant the sentence requested by the government in this case, including the nature and circumstances of the offense, and the need for the sentence imposed to serve the purposes of the criminal laws. Those purposes include "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, . . . to

provide just punishment . . . afford adequate deterrence . . . protect the public . . . ." and to provide needed education, training, treatment, and care to the defendant. 18 U.S.C. § 3553(a)(2).

### C. Analysis of Sentencing Factors

This case involves the defendant, Arellano-Valdez, being in possession of over six kilograms of fentanyl powder in the summer of 2025, which was intended for further distribution. PSR ¶ 20. Arellano-Valdez transported the fentanyl powder from California to Portland, and police interdicted the drugs before they could reach the streets of Portland. PSR ¶¶ 18-20. He also smashed his phone at the time of his arrest, which hindered the investigation into his drug trafficking organization: given this loss of evidence, agents were unable to ascertain what his role in the DTO was and whether his drug trafficking conduct in this case was connected with his drug trafficking conduct in Kansas. PSR ¶¶ 20, 41.

This conduct was serious because it involves fentanyl – a dangerous drug that can be lethal even in small amounts. *See* DEA Drug Fact Sheet – Fentanyl (Oct. 2022), available at https://www.dea.gov/sites/default/files/2022-12/Fentanyl%202022%20Drug%20Fact%20Sheet.pdf . Arellano-Valdez contributed to the spread of this drug by his trafficking conduct.

Arellano-Valdez has no prior criminal convictions. PSR ¶ 38. However, he currently has a pending federal drug trafficking case out of the District of Kansas. PSR ¶ 41. Arellano-Valdez has not yet been arraigned on his Kansas case; it is expected that he will be transported to the District of Kansas after he is sentenced on this Oregon case.

In this case, Arellano-Valdez indicated a willingness to resolve his case in an early manner and accept responsibility; thus, the government is recommending a three-level downward variance under 18 U.S.C. § 3553(a). PSR ¶ 12.

Furthermore, because he is not a United States citizen, Arellano-Valdez is subject to removal from the United States as a collateral consequence, upon the conclusion of his sentence in this case. PSR ¶ 5.

The requested sentence of 33 months custody and five years supervised release promotes respect for the law, provides just punishment, and affords adequate deterrence by holding Arellano-Valdez responsible for his conduct in this case.

### Conclusion

Based on the foregoing, the government recommends the Court impose a sentence of 33 months custody, followed by a five-year term of supervised release, and a $100 fee assessment.

Dated: April 17, 2026                    Respectfully submitted,

                                         SCOTT E. BRADFORD
                                         United States Attorney

                                         /s/*Cassady A. Adams*
                                         CASSADY A. ADAMS, CO Bar #48807
                                         Assistant United States Attorney

**Government's Sentencing Memorandum**                                    **Page 8**