Michael Charles Benson, AK Bar No. 1311070
Assistant Federal Public Defender
Email: Michael_Benson@fd.org
101 SW Main Street, Suite 1700
Portland, OR 97204
Tel: (503) 326-2123
Attorney for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 3:25-cr-00265-SI-1 |
| Plaintiff, | SENTENCING MEMORANDUM |
| v. | |
| ENRIQUE GUADALUPE ARELLANO-VALDEZ, | |
| Defendant. | |

The defendant, Enrique Guadalupe Arellano-Valdez, through counsel, Michael Charles Benson, submits this Memorandum for the Court's review and consideration in determining a reasonable sentence that is "sufficient, but not greater than necessary," as required by 18 U.S.C. § 3553(a).  A sentencing hearing is currently scheduled for April 28, 2026.

On December 16, 2025, Mr. Arellano-Valdez pleaded guilty to possession with intent to distribute fentanyl, in violation of 21 U.S.C. § 844(a)(1), (b)(1)(A)(vi). Mr. Arellano-Valdez has one unresolved objection to the sentencing guidelines as calculated in the Presentence Investigation Report (PSR). The PSR found that Mr. Arellano-Valdez acted as a courier in this case. Under USSG § 2D1.1(e)(2)(B)(i) a four-level minimal participant reduction is generally warranted for certain roles in a drug trafficking organization including the role of "a courier."

Page 1 Sentencing Memorandum

Because the evidence indicates that Mr. Arellano-Valdez worked as a courier transporting drugs from California to Oregon by bus, he should receive a four-level minimal participant reduction rather than the recommended two-level minor role reduction. This additional reduction also causes his base offense level to be reduced from 32 to 30. USSG § 2D1.1(a)(5) ("If the resulting offense level is greater than level 30 and the defendant receives the 4-level reduction in § 3D1.2(a), decrease to level 30.").

Police arrested Mr. Arellano-Vasquez after he got off a bus in Portland. The bus was known by investigators to be used frequently by passengers transporting drugs "from California to Oregon[.]" Bates 11. Mr. Arellano-Valdez lives in California. PSR ¶ 48. Mr. Arellano-Valdez did not immediately head towards a residence or local transportation, but instead sat down on the ground on top of a duffle bag loaded with drugs and began using his cellphone to contact someone "like he was waiting for someone to pick him up." BATES 178. While he was apparently waiting for someone to pick him up, he was contacted by law enforcement and consented to a search of the duffle bag. PSR ¶ 20.

The duffle bag was packed with a few changes of clothes and a box containing fentanyl. The fentanyl was not packaged for individual distribution. BATES 180. There were no scales or baggies to repackage the fentanyl. There were no pill presses to press the powdered fentanyl into the blue "M-30" pills common in the Portland market. Mr. Arellano-Valdez had no significant cash.[1] Mr. Arellano-Valdez had no weapons of any kind to protect the drugs. Based on these facts the PSR concluded that "it appears the defendant operated as a courier, transporting controlled substances to Oregon." PSR ¶ 21. The government has not objected to this finding.

---

[1] The reports in this case do not list any cash at all. It is possible there was a small amount of cash that was booked with Mr. Arellano-Valdez when he was taken into custody.

Page 2 Sentencing Memorandum

The government contends that Mr. Arellano-Valdez needs to make some greater showing in order for the Court to determine that with respect to the conduct at issue in this case he acted as a courier. Merriam Webster's Dictionary defines a courier as "a runner of contraband"[2] and the Cambridge Dictionary defines it as "a person" who "takes messages, letters, or packages from one place to another."[3] The evidence overwhelmingly indicates that Mr. Arellano-Valdez's job was to take drugs from California to Oregon by bus. Mr. Arellano-Valdez was carrying drugs on a bus from California to Oregon, a route frequently used to transport drugs. Mr. Arellano-Valdez did not have any of the tools necessary to resell the drugs, or protect the drugs, and had no apparent proceeds from the drugs with him. Once in Portland he had no vehicle, home base to go to, or even accomplice at the bus station. He was carrying only drugs and clothing for a short stay. Mr. Arellano-Valdez sat on his duffle bag and opened up his phone as if awaiting instructions for who to deliver the drugs to. It was precisely because Mr. Arellano-Valdez's actions so closely fit the profile of someone transporting drugs from California to Oregon that police conducted the *Terry* stop in this case. When intercepted Mr. Arellano-Valdez put up minimal resistance and consented to the search. He smashed his cellphone, but there is no reason to think he did so for some other reason than that he knew he had been caught transporting drugs from California to Oregon, which is a serious offense.

Probation and the government argue that the explicit four level reduction for couriers is inappropriate here because of the large quantity of drugs. Nothing in the guidelines indicates that only couriers who bring smaller quantities of drugs are entitled to the reduction. *See United States v. Maciel*, 789 F.Supp.3d 934, 937-38 (S.D. Cal. 2025) (holding that a person whose job is

---

[2] Available online at https://www.merriam-webster.com/dictionary/courier.
[3] Available online at https://dictionary.cambridge.org/us/dictionary/english/courier.
Page 3  Sentencing Memorandum

to transport drugs is a courier "regardless of the amount of drugs they are transporting[.]").

Indeed, this reading would frustrate the very purpose of the reduction which is intended to focus more on an individual's actual role in a drug trafficking organization than the simple quantity of drugs they possess. Couriers frequently possess large quantities of drugs for the simple financial reason that it is more economical to send (and pay) a smaller number of couriers with larger quantities of drugs. *See, e.g., Maciel*, 789 F.Supp.3d at 935 (considering more than 31 kilograms of fentanyl and more than10 kilograms of methamphetamine). The quantity of drugs Mr. Arellano-Valdez possessed is separately considered by the guideline and there is no reason to infer that the guidelines intend the minimal participant reduction to be unavailable to people who also receive enhancements for carrying considerable quantities. This Court should apply the four-level minimal participant reduction in this case. Because Mr. Arellano-Valdez receives the four-level minimal participant reduction his base offense level should also be reduced to thirty. USSG ¶ 2D1.1(a)(5).

Mr. Arellano-Valdez requests that the Court impose a sentence of twenty one months of incarceration, followed by supervised release.

Dated: April 22, 2026.

/s/ *Michael Charles Benson*
Michael Charles Benson, AK Bar No. 1311070

Page 4 Sentencing Memorandum